# In the District Court of the United States
## For the District of South Carolina
### BEAUFORT DIVISION

|  |  |  |
|---|---|---|
| Kevin White, #278568, | ) | |
|  | ) | Civil Action No. 9:07-2185-CMC-GCK |
| Plaintiff, | ) | |
|  | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
|  | ) | **OF THE MAGISTRATE JUDGE** |
| Tonya Miller, Lieutenant at Kershaw | ) | |
| Correctional Institution; H. Smith, | ) | |
| Lieutenant at Kershaw Correctional | ) | |
| Institution; NFN Washington, Major at | ) | |
| Kershaw Correctional Institution; NFN | ) | |
| Clee, Sergeant at Kershaw Correctional | ) | |
| Institution; NFN Miller, Sergeant at | ) | |
| Kershaw Correctional Institution; NFN | ) | |
| Powell, Officer at Kershaw Correctional | ) | |
| Institution; NFN Thompson, Lieutenant at | ) | |
| Kershaw Correctional Institution; NFN | ) | |
| Dubose, Captain at Kershaw Correctional | ) | |
| Institution, | ) | |
|  | ) | |
| Defendants. | ) | |
|  | ) | |

## I.  INTRODUCTION

The Plaintiff, Kevin White ("Plaintiff" or "White"), is incarcerated within the South Carolina

Department of Corrections ('SCDC") and was housed at the Kershaw Correctional Institution at the

time of the events giving rise to this action.[1]  He has filed suit against the above-captioned defendants,

Tonya Miller, Lieutenant at Kershaw Correctional Institution ("Lt. Tonya Miller"), H. Smith,

Lieutenant at Kershaw Correctional Institution ("Lt. Smith"), NFN Washington, Major at Kershaw

---

[1]  Plaintiff presently is incarcerated at the SCDC's Lieber Correctional Institution.  *See* Docket Sheet.

Correctional Institution ("Major Washington"), NFN Clee, Sergeant at Kershaw Correctional Institution ("Sgt. Clee"), NFN Miller, Sergeant at Kershaw Correctional Institution ("Sgt. Lula Miller"), NFN Powell, Officer at Kershaw Correctional Institution ("Officer Powell"), NFN Thompson, Lieutenant at Kershaw Correctional Institution ("Lt. Thompson"), and NFN Dubose, Captain at Kershaw Correctional Institution ("Captain Dubose"), all in their individual and official capacities,[2] alleging that his constitutional rights were violated by the Defendants[3] during an incident that occurred on March 8, 2007 at Kershaw Correctional Institution ("KerCI").

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C.  A motion for summary judgment has been filed on behalf of the Defendants.  [30]  As this is a dispositive motion, this Report and Recommendation is entered for review by the District Court.

## II.  *PRO SE* AND *IN FORMA PAUPERIS* REVIEW

Under established local procedure in this judicial district, a careful review has been made of the pro se complaint herein pursuant to the procedural provisions of 28 U.S.C. § 1915.  This review has been conducted in light of the following precedents:  *Neitzke v. Williams*, 490 U.S. 319, 324-25, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); and *Gordon v.*

---

[2]     *See* Complaint [1] at p. 1 (the caption states "in their own individual capacities") and at p. 5 (the prayer for relief states "All above defendants are being sued in their official capacity [sic] [.]").

[3]     Lt. Tonya Miller, Lt. Smith, Major Washington, Sgt. Clee, Sgt. Lula Miller, Officer Powell, Lt. Thompson, and Captain Dubose will be referred to collectively as the "Defendants".

*Leeke*, 574 F.2d 1147 (4th Cir.1978).

The complaint *sub judice* has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without paying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious." 28 U.S.C. § 1915(e) (2)(B)(i), (ii). A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). Hence, under Section 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995). The court may dismiss a claim as "factually frivolous" under Section 1915(e) if the facts alleged are clearly baseless. *Denton*, 504 U.S. at 31. In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor. *Id*.

This Court is required to liberally construe pro se documents, *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), holding them to a less stringent standard than those drafted by attorneys. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hughes v. Rowe*, 449 U.S. 9 (1980) (*per curiam* ). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a

petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III. FACTUAL BACKGROUND

Plaintiff alleges in his verified Complaint[4] that on March 8, 2007, at about 2:15 p.m., the light fixture in his cell in the Special Management Unit ("SMU") began smoking as if an electrical wire were shorting out. Plaintiff began to kick his cell door to inform the Defendant Lt. Tonya Miller of this issue. Lt. Tonya Miller told him to stop kicking his door and Plaintiff told her to come to his cell to check the situation. Plaintiff contends that Lt. Tonya Miller came to his cell, saw smoke coming out of it, and then administered the Top Cop Tear gas into his secured cell, believing that Plaintiff had started the fire. Plaintiff flooded his cell with toilet water to communicate to the control booth that he needed assistance. Lt. Tonya Miller left Plaintiff's cell, and at about 2:45p.m. she returned with the

---

[4] In this Circuit, verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

other Defendants (Lt. Smith, Major Washington, Sgt. Clee, Sgt. Lula Miller, Officer Powell, Lt.

Thompson, and Captain Dubose), and opened Plaintiff's cell door, administered tear gas in his face,

picked him up in the air, slammed him hard on the cell floor, punched his face, and kicked him in his

private area, causing massive pain and suffering.  Plaintiff alleges he was then placed in restraints,

dragged out of his cell in the nude, and slung against the wall into the holding cell while drenched

with tear gas, until shift change at 7:00 p.m.  He then was returned to his cell with water and "smut"

on the floor for seven (7) days and placed on a Nutriloaf meal plan as punishment.  Plaintiff contends

he was forced to sleep in a stripped-out cell under "control cell conditions," on the concrete floor, as

he did not have a mattress.  Plaintiff alleges that these events constituted cruel and unusual punishment

in violation of his rights under the Eighth Amendment and violated his rights to equal protection and

due process in violation of the Fourteenth Amendment.  Plaintiff claims he suffered chemical burns

over his entire face and body, back pain, chest pain, and massive migraines as a result of the

application of unnecessary force, and suffered cruel and unusual punishment by being denied adequate

medical attention to cover up the Defendants' actions.  Plaintiff also seeks "declaratory relief" for his

emotional distress, and injunctive relief in the form of treatment for the injuries he suffered.  He also

seeks compensatory, punitive, and nominal damages for the harsh conditions of confinement,

"injunctive relief to stop further incidents [from] ever occurring in future presence [sic],"[5] and a jury

trial.[6]

## IV.  PROCEDURAL HISTORY IN FEDERAL COURT

---

[5]     Complaint [1] at p. 5.

[6]     Complaint [1] at pp. 3-5.

Plaintiff commenced this action on July 10, 2007 against the above-captioned Defendants.[7]  [1] On August 22, 2007, an Answer was filed on behalf of the Defendants, contending that Plaintiff had failed to state a claim upon which relief can be granted; the Defendants set forth general denials of the allegations contained in the Complaint, and alleged that they were entitled to immunity, and also that Plaintiff had failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act.  [10]  Thereafter, on November 26, 2007, a motion for summary judgment was filed on behalf of Defendants.  [30]  On November 27, 2007, the undersigned issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified the Plaintiff of the summary judgment procedure.[8]  [31]   On December 20, 2007, the Plaintiff filed his response in opposition to the motion for summary judgment.  [39]

## V.  SUMMARY JUDGMENT STANDARD

The Defendants' motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Rule 56 states, as to a party who has moved for summary judgment:

---

[7]     In the event that a limitations issue arises, the Plaintiff will have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) (Prisoner's pleading was filed at the moment of delivery to prison authorities).  From this Court's review of the Complaint and the mailing envelope, the Plaintiff delivered his mailing to the prison mailroom on July 10, 2007.

[8]     In *Roseboro v. Garrison*, the Fourth Circuit held that *pro se* Plaintiffs must be advised that their failure to file responsive material when a defendant moves for summary judgment may well result in entry of summary judgment against them.

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id*. at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. When Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits. In determining whether a

genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## VI. DISCUSSION

### A. Introduction

The Defendants offer several defenses to Plaintiff's claim for damages, including the defense that the Plaintiff failed to exhaust his administrative remedies prior to filing this action. The Prison Litigation Reform Act of 1996 (the "PLRA"), codified as amended at 42 U.S.C. § 1997e(a), provides in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."). Thus, the PLRA requires prisoners bringing actions concerning prison conditions or other federal law to exhaust all available administrative remedies before suing in federal court. *See Porter v. Nussle*, 534 U.S. at 532; *Booth v. Churner*, 532 U.S. 731, 741 (2001). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, – U.S. –, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (*citing Porter*, 435 U.S. at 524).

In *Porter*, the Supreme Court emphasized that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. The events

alleged in the Plaintiff's Complaint are those which encompass "prison life," and therefore his case falls within the rule, articulated in *Porter*, that an inmate's exhaustion of administrative remedies is a prerequisite to filing suit. Furthermore, *Porter* makes clear that 42 U.S.C. § 1997e(a) applies to state prisoners. *Porter*, 534 U.S. at 524. The United States Supreme Court has held that under 42 U.S.C. § 1997e(a), an inmate must exhaust administrative remedies irrespective of the form of relief sought, so that an inmate seeking money damages must exhaust administrative processes available even if the remedy sought, money damages, cannot be awarded in the process. *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

This Court's review of the allegations contained in Plaintiff's Complaint and the attachments thereto indicate that Plaintiff alleges that he filed a grievance on March **12**, 2007, and further alleges that he never received a final institutional answer.[9] Plaintiff has attached to his Complaint what appears to be an original grievance concerning this issue; however, it is dated March **19**, 2007. In apparent contradiction to his claim that he filed a grievance, however, the Plaintiff also answered "yes" to the question: "If there is no prison grievance procedures [sic] in this institution, did you complain to prison, jail, or institutional authorities?"[10] Plaintiff stated:

> Had send an letter notice to Director John Ozmint informing of matters affording 30 days to exhaust remedies due to inadequacy of grievance system before filing this suit, and nothing has resulted to solve situation.[11] [Sic].

The Defendants have the burden of showing that the Plaintiff failed to exhaust his

---

[9]    Complaint [1] at II.C.2.

[10]    *Id.* at II, F.

[11]    *Id.* at II, G.1-2.

administrative remedies. *Anderson v. XYZ Corr. Health Services, Inc.,* 407 F.3d 674, 683 (4th Cir.

2005). To meet this burden, the Defendants have provided the court with the affidavit of Jean Randall,

Lieber Correctional Institution's Inmate Grievance Coordinator, dated November 20, 2007 (the

"Randall Affidavit").[12] As mentioned above, Plaintiff is presently incarcerated in Lieber Correctional

Institution. Ms. Randall has testified that the grievance file for each inmate follows that inmate from

SCDC institution to SCDC institution. She has reviewed the Plaintiff's inmate grievance file and it

appears that Plaintiff did not file a grievance in accordance with the SCDC inmate grievance

procedure regarding the matters alleged in his Complaint.[13] Ms. Randall has attached a copy of every

grievance Plaintiff filed in 2007, up to November 13, 2007.[14] The Court has reviewed these

grievances and finds that Plaintiff filed a grievance regarding the March 8, 2007 incidents set forth in

the Complaint over three months later, on June 26, 2007.[15] Plaintiff's grievance was returned to him

as "unprocessed" because it had not been filed within the fifteen-day deadline permitted by the SCDC

inmate grievance procedure.[16] Significantly to the Court, the grievance file attached to the Randall

Affidavit does not contain a copy of a grievance dated March 12, 2007, and it does not contain a copy

of the March 19, 2007 grievance attached to the Plaintiff's Complaint. Therefore, it appears to the

undersigned that the Plaintiff failed to exhaust his administrative remedies prior to bringing this

action.

---

[12]     *See* Randall Affidavit. [30-7]

[13]     *See* Randall Affidavit [30-7] at ¶¶ 5-9.

[14]     *See* Randall Affidavit [30-7] at ¶ 6.

[15]     Plaintiff's grievance file is attached to the Randall Affidavit. [30-7]

[16]     The SCDC grievance procedure also is attached to the Randall Affidavit. [30-7]

The exhaustion requirement of the PLRA, 42 U.S.C. § 1997e, is strictly construed.  While the Plaintiff may argue that any attempt to exhaust administrative remedies at this point would be futile, this court "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."  *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  It is therefore recommended that Plaintiff's action be dismissed without prejudice for failure to exhaust his administrative remedies.[17]

## B.  The Merits of the Case

Notwithstanding the foregoing, the undersigned will address the Plaintiff's allegations on their merits.

### 1.  Defendants Lt. Smith, Major Washington, Officer Powell, and Captain Dubose

First, the Court finds that the Plaintiff has failed to establish any theory of liability upon the part of Defendants Lt. Smith, Major Washington, Officer Powell, or Captain Dubose.  Although the Plaintiff has named these persons as Defendants to this case, they either were not present at the incidents in question, or took no part in the incidents in question.  First, Lt. Smith (who actually is a Captain) has stated by affidavit that he works the night shift, and did not report to KerCI until 7:00 p.m. on March 8, 2007; the incidents of which Plaintiff complains all occurred several hours earlier, between Noon and 3:00 p.m.  The only action Lt. Smith took related to this matter was to sign off on

---

[17]    In light of the decision of the United States Court of Appeals for the Fourth Circuit in *Green v. Young*, 454 F.3d 405, 409 (4th Cir.2006) (dismissal under PLRA for failure to exhaust administrative remedies does not count as a "strike" for purposes of the "three strikes" rule), the undersigned does not recommend that a "strike" be imposed in the above-captioned case.

the incident report submitted by Lt. Tonya Miller, as required by SCDC policy.[18]  Next, Major

Washington, who is in charge of security at KerCI was working on March 8, 2007 and was aware of

the incident, and was back and forth from SMU that day to observe the situation.[19]  He was not

involved on a hands-on basis with the use of force against inmates.[20]  Likewise, Captain Dubose, who

is day shift Captain at KerCI, was working on March 8, 2007 and was back and forth from SMU to

administration that day to observe the situation.[21]  He was not involved on a hands-on basis with the

use of force against inmates.[22]  Officer Powell was working on the day shift in the SMU on March 8,

2007 when Inmate Nelson set fire to his mattress, necessitating that inmate's removal from his cell.

Because Officer Powell had been assaulted by Nelson on more that one occasion in the past, any time

that Nelson has to be forcibly removed from his cell, Officer Powell is instructed to leave the SMU.

Accordingly, Officer Powell left the SMU, and by the time he returned, Plaintiff had been removed

from his cell and placed in a control cell.  Therefore, Officer Powell did not have any direct interaction

with the Plaintiff on that day.[23]  The Plaintiff has not established any theory of liability regarding these

Defendants, and it is recommended that they be granted summary judgment.

### 2.  Plaintiff Cannot Establish Liability under a Theor of *Respondeat Superior*

---

[18]     *See* Smith Affidavit [30-8] at ¶¶ 2, 5-7 *and* Incident Report, attached as un-numbered page 2 to Exhibit A to Beckwith Affidavit.  [30-3]

[19]     *See* Washington Affidavit [30-10] at ¶¶ 3, 6.

[20]     *See* Washington Affidavit [30-10] at ¶ 9.

[21]     *See* Dubose Affidavit [30-4] at ¶¶ 2, 3, 6.

[22]     *See* Dubose Affidavit [30-4] at ¶ 9.

[23]     *See* Powell Affidavit [30-6] at ¶¶ 2, 5-10.

Furthermore, to the extent that the Plaintiff seeks to impose liability on any of the Defendants under a theory of *respondeat superior*, the Plaintiff's claim fails.  In *Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985), the Court held that "[i]n order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.  The doctrine of *respondeat superior* has no application under this section."  *Id.* (citing *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977) (*quoting Bennett v. Gravelle,* 323 F. Supp. 203, 214 (D.Md. 1971), *aff'd,* 451 F.2d 1011 (4th Cir. 1971)); *see also Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978); *Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990); *Shelton v. Angelone,* 183 F. Supp. 2d 830, 836 (W.D. Va. 2002); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994), *cert. denied,* 513 U.S. 813 (1994) (holding a plaintiff must show deliberate indifference of supervisor).  None of the Defendants can be held liable under a theory of *respondeat superior*.

### 3.  Supervisory Liability Does Not Attach

Next, to the extent the Plaintiff may rely on the doctrine of supervisory liability with respect to any of the Defendants, the Plaintiff has failed to make any showing of supervisory liability. "Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury."  *Miltier*, 896 F.2d at 854 (citation omitted).  The Plaintiff must demonstrate that he faced a pervasive and unreasonable risk of harm from some specified source, and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices.  *Id.*, *see also Moore v. Winebrenner*, 927 F.2d 1312 (4th Cir.), *cert. denied*, 502 U.S. 828 (1991); *Slakan v. Porter*, 737

F.2d 368, 372 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985).  The Plaintiff has made no such

demonstration here.

### 4.  To the Extent the Plaintiff has Alleged Claims Against the Defendants in their Official Capacities, the Defendants are not amenable to suit under Section 1983

In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989),

the United States Supreme Court stated that a suit brought against "a state official in his or her official

capacity is not a suit against the official but rather is a suit against the official's office."  Suits against

officials in their official capacity are simply another way of pleading an action against the entity for

which the official is an agent.  *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56

L.Ed.2d 611 (1978).  Additionally, states and state agencies are not "persons" as defined by 42 U.S.C.

§ 1983 and therefore are not subject to suit under Section 1983.  *Will*, at 58.

The events about which Plaintiff complains allegedly occurred while the Defendants were

acting in their capacities as employees of the SCDC.  Thus, to the extent Plaintiff lodges claims

against the Defendants in their official capacities, these are actually claims against the SCDC and

should be dismissed.

### 5.  To the Extent the Plaintiff has Alleged Claims Against the Defendants in their Personal Capacities, the Defendants are Entitled to the Defense of Qualified Immunity

The doctrine of qualified immunity protects government officials who are carrying out

discretionary functions from personal monetary liability in cases where their actions do not violate

clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  In *Cleavinger v. Saxner*,

474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), the United States Supreme Court upheld the

extension of qualified immunity to prison officials.  In discussing the issue of qualified immunity, the

Court of Appeals for the Fourth Circuit stated that:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  In determining whether the specific right allegedly violated was clearly established, the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.  Moreover, the manner in which this clearly established right applies to the actions of the official must also be apparent.  As such, if there is a legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

*Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (internal quotations, citations, and modification

omitted), *cert. denied*, 516 U.S. 824, 116 S.Ct. 89, 133 L.Ed.2d 45 (1995).

In addressing the defense of qualified immunity, the United States Supreme Court has held that

"a court must first determine whether the plaintiff has alleged the deprivation of an actual

constitutional right at all, and if so, proceed to determine whether that right was clearly established at

the time of the alleged violation."  *Wilson v. Lane*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d

399 (1999).  The plaintiff's rights must be established so clearly that a "reasonable official would

understand that what he is doing violates that right."  *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir.

1991) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  If

the court initially determines that no right has been violated, the inquiry ends there, "because

government officials cannot have known of a right that does not exist."  *Porterfield v. Lott*, 156 F.3d

563, 567 (4th Cir. 1998).  Accordingly, ruling on a defense of qualified immunity requires "(1)

identification of the specific right allegedly violated; (2) determining whether at the time of the alleged

violation the right was clearly established; and (3) if so, then determining whether a reasonable person

in the [official's] position would have known that doing what he did would violate that right."

*Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." U.S. CONST. AMEND. VIII. "This protection, enforced against the states through the Fourteenth Amendment, protects inmates against the application of excessive force by correctional officers." *Stanley v. Hejirka*, 134 F.3d 629 (4th Cir. 1998). However, not every unpleasant action taken by prison officials against inmates violates the Eighth Amendment. *See Id*. "After incarceration, only the unnecessary and wanton infliction of pain constitutes . . . cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084 (1985) (internal quotation marks omitted). To succeed on a claim of excessive force under the Eighth Amendment's prohibition against cruel and unusual punishment in the context of a prison disturbance, a plaintiff must show that the officers "inflicted unnecessary and wanton pain and suffering." *Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89, 89 L.Ed.2d 251 (1985). The proper inquiry is whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). The wantonness of a defendant's conduct is adjudged in light of the defendant's state of mind. *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

Thus, to prove his claim that any of the Defendants violated his constitutional rights through the use of excessive force, the Plaintiff must satisfy two requirements. *See Stanley*, at 634. The Plaintiff must first show that the force used by those Defendants "inflicted unnecessary and wanton pain and suffering." *Hudson v. McMillian*, 503 U.S. 1, 6, 112 S.Ct. 995, 998 (1993). This first step is

the subjective showing.  "In the context of a prison disturbance, this question 'ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' "  *Stanley*, at 634 (*quoting Hudson*, 509 U.S. at 6, 112 S.Ct. at 998; *quoting Whitley*, 475 U.S. at 320-21, 106 S.Ct. at 1085).  "When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most favorable to the claimant, 'will support a reliable inference of wantonness in the infliction of pain.'"  *Stanley*, at 634, quoting *Whitley* at 322, 106 S.Ct. at 1085.

In addition to satisfying the subjective requirement, the Plaintiff must show that those Defendants' actions were "objectively harmful enough" to offend "contemporary standards of decency."  *See Hudson*, 503 U.S. at 8, 112 S.Ct. at 1000 (internal quotation marks omitted).  "In determining whether the objective component is satisfied, the factfinder must evaluate the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose."  *Stanley*, at 634.  "There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."  *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

In the present case, the Plaintiff has alleged that he was subjected to an unconstitutional use of force during an incident that occurred on March 8, 2007 at KerCI.  Specifically, the Plaintiff claims he was sprayed with gas, kicked, punched, and slammed into a wall by certain officers, all of whom are named as Defendants in this action.  However, the affidavits submitted by the Defendants, as well as the Plaintiff's medical records, contradict the Plaintiff's recitation of the facts of the alleged incident.  As the Defendants' affidavits state, the Plaintiff was an active participant in a large scale disturbance

that occurred in the Special Management Unit of KerCI on March 8, 2007.[24]  During the course of this

disturbance, two inmates had set fire to their mattresses, and several other inmates, including the

Plaintiff, had flooded their cells.  However, when the officers came to the Plaintiff's cell to remove

him from his cell, the Plaintiff became compliant and no force was used upon him.[25]  The Plaintiff was

removed from his cell without the use of force and placed into a control cell, so that his cell could be

cleaned.  After the water was removed from the Plaintiff's cell, the Plaintiff's property was also

removed and the Plaintiff was then returned to his cell.  The Plaintiff spent approximately seventy-two

hours without his property, per SCDC policy, as a result of having flooded his cell.[26]  The Plaintiff's

medical records show that the Plaintiff never complained to medical of any injuries that he relates to

the incident that occurred on March 8, 2007.[27]  The Court has reviewed the Plaintiff's medical records

provided by the Defendants and notes that Plaintiff did not seek medical treatment for any injuries

allegedly received during March 2007.[28]

The record before the Court clearly shows that there was no force used upon the Plaintiff on

the date of the incident in question.[29]  Furthermore, there is no evidence of any injury, much less an

injury that exceeds the *de minimis* injury requirement, that can be associated to the incident in

---

[24]     See Washington Affidavit [30-10]; Dubose Affidavit [30-4]; Beckwith Affidavit [30-3];
        Powell Affidavit [30-6]; Sgt. Lula Miller Affidavit [30-5]; Lt. Tonya Miller Affidavit [33]; and
        Thompson Affidavit [30-9].

[25]     *Id.*

[26]     *See* Washington Affidavit [30-10] at ____.

[27]     *See* Exhibit B to Beckwith Affidavit.  [30-2]

[28]     *See* Exhibit B to Beckwith Affidavit.  [30-2]

[29]     *See,* Defendants' Affidavits; *see also,* Plaintiff's medical records.

question.  Plaintiff's allegations fail as a matter of law, and the Defendants are entitled to summary judgment.

Furthermore, although Plaintiff alleges that he was served Nutriloaf instead of regular SCDC meals, his allegation is contradicted by the Affidavits provided by the Defendants Lt. Tonya Miller,[30] Lt. Thompson,[31] Captain Dubose,[32] Major Washington.[33]

### 6.  Plaintiff's Claims for Injunctive Relief are Moot

The Fourth Circuit has held that a prisoner transfer moots a request for declaratory and injunctive relief.  *Williams v. Griffin*, 952 F.2d 820 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986).  "Past exposure to illegal conduct does not itself show present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Barrett*, *Supra, citing City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.C. 1660 (1983).  As it is undisputed that Plaintiff is no longer housed at KerCI, the Plaintiff's claims for injunctive relief are moot and should be dismissed.

---

[30]      *See* Tonya Miller Affidavit [33] at ¶ 23.

[31]      *See* Thompson Affidavit [30-9] at ¶ 23.

[32]      *See* Dubose Affidavit [30-4] at ¶ 20.

[33]      *See* Washington Affidavit [30-10] at ¶ 20.

## <u>RECOMMENDATION</u>

Based upon the foregoing, it is recommended that the **Plaintiff's Complaint [1] should be dismissed without prejudice** because he failed to exhaust administrative remedies prior to filing this action.  In the alternative, it is recommended that the **Defendants' motion for summary judgment [30] be granted**.


G<small>EORGE</small> C. K<small>OSKO</small>
U<small>NITED</small> S<small>TATES</small> M<small>AGISTRATE</small> J<small>UDGE</small>


May 29, 2008

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

   The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

   Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

   **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).